In re BELL'S ESTATE.

In re CRUGER.

(Surrogate's Court, New York County. June. 1895.)

DESCENT AND DISTRIBUTION—BROTHER AND SISTER OF HALF BLOOD.

2 Rev. St. p. 96, § 75, subsec. 6, provides that, where the next of kin of a decedent are his mother and brothers and sisters, his property shall be distributed among them in equal shares; and section 12 provides that "relatives of the half blood shall take equally with those of the whole blood in the same degree." *Held* that, where a decedent left as her next of kin her mother and a half-sister, the half-sister would take equally with the mother.

Judicial settlement of the accounts of Meta Kane Cruger as administratrix of the estate of Edith Brevoort Bell, deceased.

Before GILBERT D. LAMB, Esq., Referee.

Stearns & Curtis, for administratrix.

William H. Hamilton, special guardian, for Angele Cruger.

LAMB, R.　　This is a voluntary accounting by Meta Kane Cruger, administratrix of the goods, chattels, and credits of Edith Brevoort Bell, deceased. The account filed discloses a personal estate amounting to $51,125.13, against which the accountant has credits of $5,137.57, and claims for herself the entire residue. The only parties interested in the estate of the decedent are two,—the accountant, Meta Kane Cruger, the mother of the decedent, and Angele Cruger, a daughter of the accountant and a sister of the half blood of said decedent. Angele Cruger is an infant, and is represented upon this proceeding by her special guardian, and he has filed objections to said account. These objections relate to two items of disbursements made by the accountant, and to the latter's claim to be entitled to the entire residuary estate.

1. As to the items of disbursements objected to, these are (1) an hotel bill of $100, claimed to have been paid by the accountant to the proprietor of the hotel where the death of the decedent occurred, and (2) a physician's bill of $210, paid for medical services to the decedent, rendered her prior to her death. Neither of these payments is supported by any voucher whatsoever, though it appears from the testimony of the accountant, taken upon commission, that such payments were reasonable and proper. Were the allowance of these items a matter of discretion with the referee, it would be exercised in favor of such accountant, but the language of the statute (section 2734 of the Code of Civil Procedure) forbids this, and the objections to these items must be sustained.

2. The contention that the infant, Angele Cruger, a sister of the decedent of the half blood, is not entitled to share in the personal estate of such decedent involves an interpretation of the provisions of the statute of distribution, and presents a question of much importance to both parties. Briefs have been submitted upon the questions raised, and the referee has accordingly examined the statute, decisions, and text-books with some care. It is claimed by the accountant that there is no controlling authority in the state of New

York upon the precise question involved. At the outset it is to be noted that the contest relates to specific personal estate of the decedent, as to which there was no evidence upon the reference that such estate was the proceeds of any inheritance coming to the decedent "by descent, devise, or gift of some one of his [her] ancestors," viz. land, and the contest is between a mother and a sister of the decedent of the half blood, the only persons interested in said estate. In the opinion of the referee, the infant Angele Cruger is entitled to one-half of the said personal estate, and a decree should be made so distributing the estate, and for the following reasons: The provisions of the Revised Statutes, so far as they bear upon this question (see part 2, art. 3, p. 97; Rev. St. [7th Ed.], p. 2304, are as follows:

"Section 6. If the deceased shall leave no children, and no representatives of them, and no father, and shall leave a widow and a mother, the moiety not distributed to the widow shall be distributed in equal shares to his mother and brothers and sisters, or the representatives of such brothers and sisters; and if there be no widow, the whole surplus shall be distributed in like manner to the mother and to the brothers and sisters, or the representatives of such brothers and sisters."

"Sec. 8. If the deceased leave a mother, and no child, descendant, father, brother, sister or representative of a brother or sister, the mother, if there be a widow, shall take one moiety; and the whole if there be no widow."

"Sec. 12. Relatives of the half blood shall take equally with those of the whole blood in the same degree; and the representatives of such relatives shall take in the same manner as the representatives of the whole blood."

The accountant contends that, as there is no relative of the whole blood of equal degree (the second) with Angele Cruger, a relative of the half blood, and that as the rights of relatives of the half blood are only specifically and expressly mentioned in section 12, which, it is contended, only contemplates a case where there are both relatives of the whole blood and relatives of the half blood, Angele Cruger can take no interest in her deceased sister's estate. In other words, it is contended that section 12 is not applicable to the case at bar. I will assume for the sake of argument that this is so, and we are thus left to ascertain, whether Angele Cruger has any rights, irrespective of section 12. The language of section 6 covers this case, in the opinion of the referee. It is there provided that, when the deceased leaves a mother and sister, in that event the surplus goes in equal shares to them. Is the infant, Angele Cruger, a sister of the decedent? Is a sister of the half blood a "sister" in the eye of the law? This question is to be answered in the light of the recognized policy of the law to provide in the statute of distribution for an equal distribution of the property of the intestate. In the case of Hallett v. Hare, 5 Paige, 315, Chancellor Walworth said, at page 316:

"The rule of law on this subject has not been altered by the Revised Statutes. It has been considered as settled, ever since the decision of the house of lords in Watts v. Crooke, Show. Parl. Cas. 108, that in successions of personal estates, relatives of the half blood, in equal degree of cognation to the intestate, take equally with relatives of the whole blood, and that they also take by representation, where representation would be allowed among relatives of the whole blood, of the same degree. See Id. 2 Vern. 124; Burnet v. Mann, 1 Ves. Sr., 156; Harris, Just. 370, note; 1 Strahan, Domat. 658.

That brothers and sisters of the whole blood and the half blood are viewed in the same light, and as equally next of kin, in respect to the distribution of personal property, is apparent from the language of courts and judges from the earliest time down to the present."

In Brown v. Farndell, Carth. 51, the report reads:

"The case was, one Brown (who was brother of the whole blood to the plaintiff, Brown) died intestate and without issue, and the wife of Farndell, one of the defendants, was his sister of the half blood, and administration of all the goods of the intestate was committed to Brown, the plaintiff; and afterwards, within the year, after the death of the intestate, and before any distribution of the goods, etc., the wife of Farndell died, and thereupon he libeled, in the spiritual court (before Dr. Shore), to have letters of administration granted to him of part and share of the goods of Brown, the intestate, which belonged to his wife, in her lifetime, as his sister of the half blood, according to the distribution of intestates' estates, and thereupon Brown moved for a prohibition; and a rule was made for a prohibition, and that the plaintiff should declare upon it to have the matter in law come in judgment. And, accordingly, Brown (the plaintiff) declared and set forth all this matter, and the statute of distribution of intestates' estates, and particularly that paragraph by which the manner of distributions among collaterals is directed, and also that paragraph by which it is enacted that no distribution shall be made till a year is fully expired after the death of the intestate, and, moreover, suggested that the construction of the statutes belonged to the king, in his temporal courts, and not to the spiritual court, and that the defendant, notwithstanding, etc., had proceeded there, etc. And, upon a demurrer to this declaration, two points were made, argued, and adjudged: (1) Whether the sister of the half blood to the intestate should have an equal distribution with the brother of the whole blood. And it was adjudged that she should, for the words of the statute are, 'To every of the next of kindred of the intestate, who are in equal degree,' and the sister of the half blood is in equal degree of kindred to the intestate with the brother of the whole blood, for the one is his sister and the other his brother. No difference is made between the whole blood and the half blood in the distribution of intestate's personal property."

See note to Bl. Comm. (Sharswood) bk. 2, p. 56. In Smith's Case, 1 Mod. 209 (decided under statute of 22 & 23 Car. II.), the entire report reads:

"A man dies, leaving issue by two several venters, viz. by the first three sons, and by the second two daughters. One of the sons dies intestate; the elder of the two surviving brothers takes out administration, and Sir Lionel Jenkins, judge of the prerogative court, would compel the administrator to make distribution to the sisters of the half blood. He prayed a prohibition, but it was denied upon advice by all the judges, for that the sisters of the half blood being a kin to the intestate, and not in remotiore gradu than the brothers of the whole blood, must be accounted in equal degree."

The language of the text-books is to the same effect. In Remsen on Intestate Succession in New York, the author's views on this subject are thus expressed:

"Relatives of the half blood take real and personal estate equally with those of the whole blood in the same degree, except when real estate comes to the intestate by descent, devise or gift immediately, and not immediately from some one of the intestate's ancestors."

In Woerner's American Law of Administration, at page 143, it is said: ·

"Under the artificial system of the common law, collateral kindred of the half blood were entirely excluded from inheritance of land, while in the distribution of the personalty no distinction is recognized between brothers and

sisters of the whole blood and those of the half blood, for they (the half blood) are of the kindred of the intestate, and only excluded from inheritance of land upon feudal principles."

In Toller on Executors, it is said, at page 383:

"If an intestate leaves a deceased brother's only son and ten children of a deceased half sister, the ten children of the deceased half sister shall take ten parts in eleven with the son of the deceased brother."

The adjudications in the other states having statutes similar to that of New York state are to the same effect.

In Prescott v. Carr, 29 N. H. 453, Eastman, J., said, at page 459:

"After a careful consideration of this case, we entertain no doubt that, independent of the special provisions of the second section of our statute, there is no distinction to be made between brothers and sisters of the whole and half blood."

In the state of Arkansas, whose statute is taken from that of New York, it was held, in a case where, as here, there was no next of kin in equal degree with the relatives of the half blood, but the said relatives of the half blood, being two sisters of the intestate of the half blood, constituted all of the next of kin, that they took the whole of the intestate's personal property. See Kelly's Heirs v. McGuire, 15 Ark. 555, at page 596.

The law in the state of Tennessee is thus expressed: "The whole and half blood have, however, equal rights in all cases." See Pritchard, Wills and Administration, § 775. See also Kyle v. Moore, 3 Sneed, 183.

The Civil Code of Dakota (§ 787) provides that kindred of the half blood inherit property equally with those of the whole blood in the same degree, unless it come to the intestate by descent, devise or gift of some one of his ancestors, in which case all of those who are not of the blood of the ancestor must be excluded.

In view of the foregoing, the law appears to be that the interest of Angele Cruger in the estate of the decedent is precisely the same as it would have been had she been a sister of the whole blood of said decedent. Were this question one relating to lands descending from the decedent's father, the answer would be entirely different. The statute of descent of New York state expressly excludes brothers and sisters of the half blood from the inheritance coming to the intestate on the part of an ancestor not of the blood of such half blood. The language of the statute of descent is as follows (Rev. St. pt. 2, c. 2, p. 753, § 15; Rev. St. [7th Ed.] p. 2212):

"Relatives of the half blood shall inherit equally with those of the whole blood in the same degree; and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood; unless the inheritance came to the intestate by descent, devise or gift of some one of his ancestors; in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

In such a case the language of the court of appeals in Wheeler v. Clutterbuck, 52 N. Y. 67, would apply. Obviously, as in this case only personal property is involved, the provisions of the statute last cited have no application.

For the reasons given the objections to the two items above mentioned should be sustained, and the residuary estate herein should be distributed, one-half to the accountant and one-half to the infant, Angele Cruger.